

**SO ORDERED.**

**SIGNED this 28 day of June, 2006.**

                               **JANICE MILLER KARLIN**
                         **UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| HEATHER RAE LOWDER, | ) | Case No. 05-44802 |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |

**MEMORANDUM ORDER AND OPINION SUSTAINING TOYOTA MOTOR
CREDIT CORPORATION'S OBJECTION TO DEBTOR'S SECOND
AMENDED CHAPTER 13 PLAN AND OVERRULING DEBTOR'S OBJECTION
TO TOYOTA MOTOR CREDIT CORPORATION'S CLAIM**

This matter is before the Court on Toyota Motor Credit Corporation's ("Toyota") Objection to the Debtor's Second Amended Chapter 13 Plan[1] and Debtor's Objection to Toyota's Claim.[2] This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L). Because Debtor, Heather Lowder, filed her bankruptcy petition on November 21, 2005, the case is governed by the Bankruptcy Code, as

---

[1]Doc. 24.

[2]Doc. 39.

modified by the provisions of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act.[3]

## I. FINDINGS OF FACT

The parties have filed a Stipulation of Facts, which this Court adopts and summarizes. Within 910 days of the filing of her Chapter 13 petition, Debtor purchased a 2002 Toyota Camry. The Debtor uses her car, in part, to travel to and from her place of employment, which is located approximately 20 miles from her residence. There is no public transportation readily available to her work site, and, without her car, Debtor would be unable to get to work. Her employer does not require her to have a car as part of her employment, and she does not use it within the scope of her employment. Likewise, she does not use the car in any other business, occupation or profession. Further, her employer does not contribute to the payment of, or pay for, car or insurance payments, gasoline, maintenance costs or for repairs. While Debtor uses her car to travel to and from work, she also uses it to do personal shopping and run personal errands. All of these uses were contemplated when Debtor "acquired" the Camry.

Debtor's Second Amended Chapter 13 Plan proposes to pay Toyota's claim in full over the life of the plan,[4] but without payment of any interest. Toyota objected to this treatment of its claim, requesting instead that the Court deny confirmation unless Debtor again amends her plan to pay interest on its claim in "at least" at the rate required by *Till v. SCS Credit Corp*.[5] Toyota has a

---

[3]All future statutory references are thus to the BAPCPA, 11 U.S.C. §§ 101-1532 (2005), unless otherwise specifically noted. Any reference to the Bankruptcy Code as it existed prior to the 2005 amendments (if different) will be referred to as 11 U.S.C. § 101, et seq. (2004) or to "Pre-BAPCPA § 101 et seq.

[4]Debtor's Second Amend Chapter 13 Plan indicates "[e]stimated completion is 60 months." Doc. 22.

[5]541 U.S. 465 (2004) (rejecting the use of the contract rate of interest to satisfy the present value requirement in a Chapter 13 plan). The Chapter 13 Trustee in this Division typically uses a "discount" rate of 3% over prime, and pre-BAPCPA, this Court typically held that while the Trustee's discount rate is presumed to be an appropriate rate under

2

properly perfected purchase money security interest in this automobile and has filed a claim in the amount of $23,122.99.[6] Debtor objected to that claim, asserting that Toyota is entitled to be paid only the amount of its claim on the date of filing, over the life of her Chapter 13 plan, and without any additional interest. The parties agree that if the Court determines the Camry was not acquired for Debtor's personal use, that the value of the collateral is $14,600. In that event, Toyota would have a secured claim in the amount of $14,600, which would be entitled to payment of interest at the Trustee's discount rate, and an unsecured claim for the balance remaining due on the note.[7]

## II.  ISSUES TO BE DECIDED

This Court must decide two issues: 1) did Debtor acquire the Camry for her "personal use" and, 2) if so, can the Court confirm a plan that does not pay interest to Toyota on the full amount due it on the date of filing.

## III.  CONCLUSIONS OF LAW

As this Court previously discussed in *In re Vega*,[8] § 1325 establishes confirmation requirements for Chapter 13 plans. Section 1325(a)(5) mandates that Chapter 13 plans must provide one of three alternative treatments to secured creditors. First, a plan can provide the secured creditor

---

*Till*, any party can rebut that presumption with evidence that a higher or lower than normal risk of default exists under the unique facts of the particular case.

[6] Although the stipulation between the parties does not indicate that Toyota's security interest is a purchase money security interest, no one has raised that as an issue. Therefore, the Court has assumed that Toyota has a properly perfected purchase money security interest in the Camry. The parties should seek immediate reconsideration if Toyota does not have a purchase money security interest in the vehicle.

[7] Doc. 39, Debtor's Objection to Claim, agrees that if "the 'hanging paragraph' of § 1325 does not apply, then the claim would be allowed as a secured claim, to the extend (sic) of the value of the security, which TMCC agrees to be $14,600, to be paid to that extent with *Till* interest."

[8] *In re Vega*, __ B.R. __, 2006 WL 1731224 (Bankr. D. Kan. June 19, 2006).

with whatever treatment the secured creditor has agreed to accept.[9] Clearly, Toyota has not agreed to accept the treatment being provided it in the instant plan, so this alternative is not available to Debtor. Second, a plan can provide for the surrender of the collateral to the secured creditor.[10] Debtor is not agreeing to surrender the Camry. The only other remaining option for Debtor, therefore, is that her plan must provide for her to retain the collateral while simultaneously providing Toyota with a stream of payments equal to the amount of its allowed secured claim.[11]

Along with this third option, the plan must provide: a) that the secured creditor retain its lien until the earlier of the payment of the underlying debt pursuant to non-bankruptcy law or the issuance of a discharge; b) that the secured creditor retain its lien to the extent recognized by non-bankruptcy law if the case is dismissed or converted without completion of the plan;[12] and c) that the value as of the effective date of the plan of property to be distributed under the plan on account of the secured claim is not less than the allowed amount of such claim.[13] This section mandates that the secured creditor receive the present value of its claim as of the petition date. The Supreme Court has, pre-BAPCPA, interpreted this section to require the payment of interest on the secured claim at a rate determined by an adjustment from the prime rate based on the risk of nonpayment.[14]

---

[9] Section 1325(a)(5)(A).

[10] Section 1325(a)(5)(C). Prior to the adoption of the BAPCPA revisions to the Code, the creditor would then sell the collateral. The net amount received was then subtracted from the debt and the difference allowed as an unsecured claim. Typically in this District, in the vast majority of plans, unsecured claims are ultimately discharged, once the plan is completed, without any payment.

[11] Section 1325(a)(5)(B)(ii).

[12] Section 1325(a)(5)(B)(i)(1).

[13] Section 1325(a)(5)(B)(ii).

[14] *Till v. SCS Credit Corp.*, 541 U.S. at 484-85.

4

The last requirement is that if the plan provides for periodic payments, such payments must be in equal monthly amounts and must be in an amount sufficient to provide adequate protection to the secured creditor.[15] This third requirement is designed to protect the secured creditor from any decrease in the value of its collateral during the life of the Chapter 13 plan.[16] Toyota does object on the basis that it is not being protected from a decrease in the collateral value because the plan provides no payment of interest.

The BAPCPA opted to differentiate between the treatment required for creditors who loaned money for a debtor to purchase a motor vehicle, for personal use, within 910 days preceding the filing date, and other creditors. It did so by inserting an unnumbered paragraph at the end of § 1325(a)(9), which clearly appears not to be a part of—or even related to, subsection (9) (which conditions confirmation on debtor's compliance with the duty to file required tax returns), but instead appears related to § 1325(a)(5). The hanging paragraph states, in pertinent part, as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in Section 30102 of title 49) acquired for the personal use of the debtor...."

The applicable subsection of § 506 is, of course, § 506(a)(1), which provides that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property...."

---

[15]Section 325(a)(5)(B)(iii).

[16]*In re Fleming,* 339 B.R. 716, 720 (Bankr. E.D. Mo. 2006) (outlining requirements for confirmation, post-BAPCPA, and ultimately holding that anti-cramdown provision of BAPCPA does not require payment of interest at contract rate, but instead at *Till* rate).

Accordingly, the language contained within the hanging paragraph makes the value of the collateral irrelevant in determining the allowed amount of a claim secured by a purchase money security interest in a vehicle acquired within 910 days of the bankruptcy filing for the personal use of the debtor. And unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount of the underlying debt under nonbankruptcy law.[17]

Under the stipulated facts, if the Court finds that Debtor acquired the car for personal use, then Toyota is entitled to be paid the full amount of its claim and the Court will have to determine what interest, if any, should be paid. If the hanging paragraph does not apply, Toyota will be treated exactly as it would have been pre-BAPCPA. In that instance, Toyota will be entitled to a secured claim in the stipulated amount of the value of the collateral ($14,600) and will be entitled to be paid interest on that amount at the ongoing *Till* rate typically used.[18] It will also be allowed an unsecured claim for the balance of the debt it is owed.

### A. The hanging paragraph in § 1325(a) does apply in this case.

Debtor contends that because she uses her car to drive to and from work, the car was not "acquired for the personal use of the debtor," and thus the anti-bifurcation language contained within the hanging paragraph in § 1325(a) does not apply to her case. Unfortunately, the term "personal

---

[17]*In re Ezell*, 338 B.R. 330, 340 (Bankr. E.D. Tenn. 2006) (generally holding that if debtor elects to surrender vehicle obtained within 910 days of filing bankruptcy, surrender is deemed to fully satisfy creditor's claim because anti-cramdown provision works both ways, and thus creditor retains no deficiency to assert as an unsecured claim). *See also In re Vega*, __ B.R. __, 2006 WL 1731224 (Bankr. D. Kan. June 19, 2006) where this Court held the secured claim had to be reduced to equal the purchase money portion of the note remaining due on collateral acquired within 910 days of the filing.

[18]Toyota's Objection to Chapter 13 Plan (Doc. 24) states that "[a]t the very least, Toyota would be entitled to the *Till* interest rate." At a hearing on the matter held June 26, 2006, counsel for Toyota confirmed that Toyota did not object to receipt of the applicable *Till* rate.

6

use" is not defined in the Bankruptcy Code, and the legislative history of the BAPCPA does not provide any insight into what Congress specifically intended when it used this term in the 910 car context. However, what constitutes "personal use" has been addressed by the Court of Appeals for the Fourth Circuit in a different context arising under the Bankruptcy Code. The Court finds that opinion instructive here.[19]

In *Cypher Chiropractic Center v. Runski (In re Runski),*[20] Cypher Chiropractic Center sold its chiropractic business to Runski, and financed part of the transaction. The debtor moved to redeem some medical and office equipment securing Cypher's claim on the theory that the property was "intended primarily for personal use," and thus subject to redemption under § 722,[21] because the property was titled in the debtor's individual name. The court, relying on cases interpreting whether a debt is a consumer debt under § 101(8), held that "property used for business purposes or with a profit motive is not 'property intended primarily for personal . . . use' within the meaning of § 722."[22]

The Court finds the approach taken by the *Runski* court persuasive in deciding how this Court should interpret the term "personal use" in § 1325(a).[23] When a debtor can establish that a

---

[19]Rules of statutory construction require the Court to presume that terms have the same meaning throughout the same act. *United States Nat'l Bank v. Independent Ins. Agents of Am., Inc.* 508 U.S. 439, 460 (1993).

[20]102 F.3d 744 (4th Cir. 1996).

[21]Section 722 provides, in pertinent part, that "An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien."

[22]102 F.3d at 747.

[23]The Court has found only one other decision dealing with the definition of "personal use" in the context of a 910 car loan. In *In re Jackson*, 338 B.R. 923 (Bankr. M.D. Ga. 2006), the debtor contended that a car acquired for his non-debtor wife's use within 910 days of the date he filed for bankruptcy was not subject to the hanging paragraph

7

vehicle has been acquired for business purposes, the hanging paragraph in § 1325(a) will not apply. That debtor will be able to bifurcate the claim into a secured and unsecured portion and pay only the value of the vehicle, with interest. Conversely, when the evidence shows that a vehicle was acquired for non-business, or the "personal," use of the debtor, bifurcation is impermissible.

The stipulated evidence shows that Debtor did not acquire the vehicle for business purposes. Merely acquiring a vehicle for her own use, with one of the uses contemplated being to drive to and from work, is not for "business" purposes; it is for personal use.[24] If Debtor's employer required her to have this automobile to conduct the business of that employer, paid for its costs or expenses to operate, or if she used it within the scope of her employment, this would be a harder question—one this or other courts will undoubtedly be required to decide. Or, for example, if a debtor was required to use his automobile to regularly carry equipment and supplies to a construction site, and acquired it for that purpose, that debtor might be able to demonstrate that the intended use was for business, instead of personal use.

Conversely, the Court expects to see future cases where an automobile was acquired for both business and personal purposes.[25] However, that issue is not today before the Court, and the Court

---

because it was not purchased for the "personal use of the debtor." The court defined "personal" as "'[o]f or relating to a particular person; private.'" *Id.* at 926 (quoting American Heritage Dictionary of the English Language (4th ed. 2000)). Using this definition, the court held that "the vehicle must have been acquired for the use of a particular person-Debtor-for the hanging paragraph to apply." *Id.* The approach taken by this Court is not inconsistent with the one taken by the *Jackson* court, but rather expands on that definition by holding that the vehicle must also be used for non-business purposes to qualify as "personal use."

[24]The Court would note that to hold otherwise could lead to harsh results for debtors in other contexts. For example, many individual debtors who use their automobiles primarily to drive to and from work could, under this Debtor's theory, be prohibited from redeeming those vehicles under § 722.

[25]The Court recognizes that there may be situations where an automobile is used almost exclusively for business purposes, but may be used for personal use in a completely de minimis amount, such as a case where a debtor uses an automobile in his business, but occasionally stops to purchase a gallon of milk on his way home from work. The outcome in such a case may differ from that in this case. However, because the personal use of the automobile in this case is clearly more than de minimis, the Court need not address that issue at this time.

8

does not decide it. Instead, all that is decided today is that when a vehicle is not used within the scope of employment and the vehicle is acquired for the joint purpose of traveling to and from work and for conducting a debtor's private affairs, it is properly classified as "personal use" for purposes of the Bankruptcy Code. Based upon the facts of this case, the Court holds that the hanging paragraph in § 1325(a) does apply here and that Debtor must comply with the provisions of § 1325(a) that deal with car loans made within 910 days of filing bankruptcy.

### B. Toyota is entitled to interest on its claim under *Till*.

The Court now turns to the issue of what effect the hanging paragraph has on a creditor's rights to be paid interest on its claim that is secured by a purchase money security interest in a vehicle acquired within 910 days of filing. Prior to the enactment of the BAPCPA, debtors routinely used § 506 to bifurcate an undersecured claim in an automobile into what essentially amounted to two claims. The first claim was secured to the extent of the actual value of the automobile on the date of filing or valuation, with any remaining amount constituting a general unsecured claim. If paid through the Chapter 13 plan, the secured portion of the claim was entitled to be paid in full, while the unsecured portion was treated the same as all other general unsecured claims under the plan.

In addition to paying the full amount of that part of the claim that was truly secured by the value of the asset, plans could only be confirmed over a creditor's objection if "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."[26] In order to comply with this requirement, debtors

---

[26] 11 U.S.C. § 1325(a)(5)(B). This phrase has uniformly been interpreted to mean that the creditor was entitled to interest on its secured claim, to represent the time value of money, to guard against inflation, and to factor in the risk of nonpayment. *Till*, 541 U.S. at 474.

9

were required to provide interest on the secured claim at a rate that started with the national prime rate, with an adjustment, typically upwards, for risk of non-payment. This modified, prime-plus approach is generally referred to as the "*Till* rate."

In order to be entitled to interest on a claim in a Chapter 13 case under § 1325(a)(5), a creditor must have an "allowed secured claim." Debtor contends that creditors can only have an allowed secured claim through the operation of § 506, arguing that § 506 provides the definition of a secured claim and an unsecured claim. Because § 506 is made inapplicable to 910 car cases by the terms of the hanging paragraph in § 1325(a), Debtor claims that Toyota does not have an "allowed secured claim" and § 1325(a)(5) is completely inapplicable – including the provision that requires *Till* interest.

At least one post-BAPCPA decision, *In re Carver*,[27] has held that claims involving 910 car loans are no longer secured claims, and therefore are not entitled to receive interest under a Chapter 13 plan. The court in *Carver* held that because § 506(a) provides the only "generally applicable definition of a secured claim" in the Bankruptcy Code, without the application of that section a creditor does not have a "secured claim" under the Bankruptcy Code.[28] The rationale is that without a secured claim, § 1325(a)(5) becomes inapplicable and the creditor is no longer entitled to receive interest on its claim under the plan.

The *In re Carver* analysis has been recently addressed by numerous courts trying to make sense out of this less than clear provision, and it has been generally rejected in all published and

---

[27]338 B.R. 521 (Bankr. S.D. Ga. 2006).

[28]*Id.* at 526-27, holding that because § 506 contains essentially identical language relating to both secured and unsecured claims, a finding that it is the definitional section for these terms, and that a creditor can only have a secured or unsecured claim if § 506 is applicable, creates some sort of an undefined third classification of claims that are neither secured nor unsecured.

unpublished decisions available for review on Westlaw. In *In re Montoya,*[29] Judge Boulden analyzed *Carver*'s rationale as follows:

> Since the implementation of the BAPCPA, there have been numerous opinions interpreting the interplay between § 1325(a)(5) and the hanging paragraph. The majority of courts interpreting the hanging paragraph hold that it precludes a Chapter 13 debtor from using § 506 to cram down a 910-day vehicle. This court agrees with the majority. One court, however, has determined that a 910-day vehicle claim is neither an unsecured claim nor an allowed secured claim and that § 1325 is no longer applicable to 910-day vehicle claims. This Court respectfully disagrees. The existence of a claim is usually determined by non-bankruptcy substantive law, whereas valuation of that claim is determined by § 506. A purchase money security interest is secured through the parties' contract and applicable perfection statutes and is secured without the operation of the Code. A creditor's secured status is not erased without any further adjudication merely because the hanging paragraph makes the § 506 valuation mechanism inapplicable to 910-day vehicle claims.[30]

This Court has been unable to find any written decision[31] adopting the *Carver* analysis; instead, all decisions have found that the hanging paragraph does not erase a creditor's secured status merely because the valuation mechanism in § 506 is not applicable to that particular claim.[32]

---

[29] 341 B.R. 41 (Bankr. D. Utah 2006).

[30] *Id.* at 44 (internal citations omitted).

[31] The Court recognizes that Judge Berger has reached a contrary result within this District in the case of *In re Wampler*, United States Bankruptcy Court, District of Kansas, Case No. 05-27659, and announced his oral decision, with a written opinion to follow. This written opinion has not yet been issued, but this Court believes *Wampler* may follow the *In re Carver* rationale, holding that the non-applicability of § 506 to 910 day automobile loans results in the creditor losing its right to receive interest during the pendency of the plan. This Court further understands that the confirmation order in *Wampler* was signed, requiring the impacted creditor to file a Notice of Appeal, notwithstanding the fact the written decision had not been entered. That appeal will hopefully be quickly decided by the Court of Appeals for the Tenth Circuit under the new provisions of 28 U.S.C. § 158(d)(2), which is a valuable addition to the United States Code in light of the numerous ambiguities in this new law.

[32] *In re Soards*, __ B.R. __, 2006 WL 1676221 (Bankr W.D. Ky. 2006) (finding secured creditor on 910 car entitled to *Till* interest); *In re Bufford,* __ B.R. __, 2006 WL 1677160 (Bankr. N.D. Tex. 2006) (holding 910 claims are included in the present value requirement of § 1325(a)(5)(B)(ii) and that § 506 does not define an "allowed secured claim" for purposes of § 1325(a)(5)); *In re Brooks*, __ B.R. __, 2006 WL 1687478 (Bankr. E.D.N.C. 2006) (rejecting *Carver* and finding 910 creditor entitled to interest at the *Till* rate); *In re Scruggs*, 342 B.R. 571 (Bankr. E.D. Ark. 2006) (declining to follow *Carver*); *In re Montgomery,* 341 B.R. 843, 845 (Bankr. E.D. Ky. 2006) (disallowing bifurcation of a 910 car loan notwithstanding late objection by creditor); *In re Shaw*, 341 B.R. 543, 546-47 (Bankr. M.D.N.C. 2006) (holding that to agree with debtor's position that hanging language eliminates secured claims in 910 car cases, the court would have to conclude that, without § 506, a creditor could not be secured under the Bankruptcy Code. Even though

This analysis is supported by the United States Supreme Court view in *Dewsnupp v. Timm*[33] that the words "allowed secured claim" need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather the words should be read term-by-term to refer to any claim that is, first, allowed, and second, secured.[34] Accordingly, this Court agrees with *In re Brown*,[35] which held

> "[i]t is neither necessary nor appropriate to contort § 506(a) into a definitional provision. Other Code sections address whether a claim is 'allowed' and 'secured.' 11 U.S.C. § 502 governs whether a claim is deemed allowed. 'A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.' 11 U.S.C. § 502(a). ...
>
> 11 U.S.C. § 101 establishes that a debt is 'secured' by a lien. *See* § 101(37) ('The term "lien" means charge against or interest in property *to secure payment of a debt* ....') (emphasis added). ...
>
> Because the 910 Claims are 'allowed' under § 502 and 'secured' by recourse to underlying collateral, they are 'allowed secured claim[s]' as contemplated by § 1325(a)(5). The 910 Claims are thus included in the present value requirement of § 1325(a)(5)(B)(ii)."[36]

---

the hanging paragraph makes § 506 inapplicable to certain secured claims, it does not mean that claims covered by the hanging paragraph are no longer secured); *In re Montoya,* 341 B.R. at 44 (disagreeing with *Carver*); *In re DeSardi*, 340 B.R. 790, 811-12 (Bankr. S.D. Tex. 2006) (holding that the effect of the 910 language "is not to make the claims not 'secured.' Rather it is to remove the § 506 definition of 'secured' from being applicable in § 1325."); *In re Brown,* 339 B.R. 818, 821(Bankr. S.D. Ga. 2006*) (*holding § 506 does not define secured claims, and debtor with 910 car must pay interest); *In re Fleming*, 339 B.R. at 721-22 (holding 910 language merely prohibits the bifurcation and cram down of car creditors' claims and thus quantifies the car creditors' secured claims at the balance due on the filing date; language has no impact on the requirement to pay present value set forth in § 1325(a)(5)(B)(ii) other than to clarify the dollar amount of the claim which must receive present value. *Till* still controls what interest rate is required to ensure present value); *In re Wright*, 338 B.R. 917, 919-920 (Bankr. M.D. Ala. 2006) (stating that secured claims that fit under the 910 provision must be treated as fully secured); *In re Robinson*, 338 B.R. 70, 75 (Bankr. W.D. Mo. 2006) (concluding that statute only means that debtors have to pay full amount of debt plus interest at rate endorsed by Till); *In re Johnson,* 337 B.R. 269, 272 (Bankr. M.D.N.C. 2006) (finding that statute merely provides debtors may not bifurcate claim of a secured creditor when the claim is covered by statute).

[33] 502 U.S. 410 (1992) (construing the relationship between § 506(a) and "allowed secured claim" in § 506(d)).

[34] *Id*. at 415.

[35] 339 B.R. at 821.

[36] *Id.*

12

This Court thus adopts the position taken by the majority of courts that have faced this issue and finds that the hanging paragraph in § 1325(a) does not render a creditor, secured by operation of state law, into some undefined other type of creditor. The purchase money claim remains secured, despite the inapplicability of the valuation mechanism contained in § 506. As a result, Debtor, Heather Lowder, must comply with the unchanged requirement to provide present value to Toyota, which result is mandated by § 1325(a)(5)(B)(ii), and provide for Toyota's claim to be paid with interest at the *Till* rate.[37]

## IV. CONCLUSION

Based upon the foregoing discussion, the Court overrules Debtor's objection to Toyota's proof of claim, and sustains Toyota's objection to confirmation of Debtor's Chapter 13 plan. The Court finds that the hanging paragraph in § 1325(a) is applicable under the facts of this case, despite the fact that Debtor acquired her Camry to drive to and from her place of employment in addition to her intent to use the car for routine personal errands required for daily living. The Court further finds that the application of the hanging paragraph in § 1325(a) does not render § 1325(a)(5)(B)(ii) inapplicable, and that Debtor must satisfy the present value requirement contained in that section by paying Toyota interest pursuant to *Till* in order to have a plan confirmed.

**IT IS, THEREFORE, BY THIS COURT ORDERED** that Toyota Motor Credit Corporation's Objection to the Debtor's Second Amended Chapter 13 Plan (Doc. 24) is sustained. Debtor is ordered to file a third amended Chapter 13 plan consistent with this Order, by **July 25, 2006**, as well as to provide notice with an objection deadline. Failure to file and notice such a plan by that date may constitute unreasonable delay, and the Court will entertain a Motion to Dismiss

---

[37] Chapter 13 plans can continue to modify the rights of 910 vehicle creditors because the BAPCPA left unchanged § 1322(b)(2), which requires only that interests secured by a debtor's principal residence remain unmodified.

under 11 U.S.C. § 1307(c)(1) if such amendment is not timely filed.  The case will next be heard on the **July 26, 2006 docket, at 1:30 p.m.**

**IT IS FURTHER ORDERED** that Debtor's Objection to Toyota's Claim (Doc. 39) is overruled.

# # #

Case 05-44802    Doc# 49    Filed 06/28/06    Page 14 of 14